## Chapleski, et al. *v.* Department of Transportation.

Argued May 2, 1972, before Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT. President Judge BOWMAN did not participate.

*Pasco L. Schiavo,* with him *Sanford S. Marateck,* and *Lark, Makowski and Marateck,* for appellants.

*John K. Kraybill,* Assistant Attorney General, with him *Robert W. Cunliffe,* Deputy Attorney General, and *J. Shane Creamer,* Attorney General.

OPINION BY JUDGE BLATT, May 30, 1972:

This appeal is brought from a decision of the Court of Common Pleas of Northumberland County dismissing the appellants' appeal from objections to an in limine report of the Board of Viewers.

The appellants, as two partnerships, are the owners of two parcels of land in Coal Township, Northumberland County, which they purchased from the County in 1959. Each of the deeds conveying the parcels to the appellants contained the following clause: "Reserving unto the Northumberland County Commissioners any claim for damages by reason of the widening or relocation of State Highway Route 49015." On July 27, 1963, the appellants conveyed one parcel to Thomas Coal, Inc., and on September 22, 1966, this parcel was reconveyed to the appellants. Both of these deeds also contained the above-mentioned reservation clause. In

September 1968, the Commonwealth filed a plan with the Court of Common Pleas of Northumberland County which condemned certain portions of the appellants' property for the widening and relocation of Route 49015, taking approximately 6½ acres.

Because of the clause in the appellants' deeds reserving condemnation damages for the County, the Commonwealth refused to award the appellants any damages. The appellants, therefore, filed a petition with the lower court asking that court to rescind the reservation and declare it invalid. Both the appellants and the Commonwealth agreed to submit the matter initially to the Board of Viewers, and, following its hearing, the Board submitted an in limine report holding that the reservation was valid and the County was entitled to any condemnation damages. The lower court affirmed this decision and dismissed the appellants' objections thereto. We must affirm that decision.

The essential issue before us is the meaning of the clause in the deeds. Was it applicable only to condemnation damages existant in 1959 when the deeds were executed? It is clear that: "Nothing is more firmly settled in the law than the fact that the owner of land at the time of condemnation by eminent domain proceedings is entitled to any damages which result from the condemnation. . . ." *Smith v. Commonwealth,* 351 Pa. 68, 71, 40 A. 2d 383, 384 (1945). It is equally clear, however, that a grantor may, if he so states clearly in the deed, reserve for himself condemnation damages to the land transferred. *Covert Appeal,* 409 Pa. 290, 186 A. 2d 20 (1962); *Krill v. Petitto,* 405 Pa. 203, 175 A. 2d 54 (1961). In our interpretation of the reservation clause here concerned, we must be guided by the rules applicable to the construction of deeds stated by the Supreme Court in *Yuscavage v. Hamlin,* 391 Pa. 13, 16,

137 A. 2d 242, 244 (1958), and which provide: "(1) that the nature and quantity of the interest conveyed must be ascertained from the instrument itself and cannot be orally shown in the absence of fraud, accident or mistake and we seek to ascertain not what the parties may have intended by the language but what is the meaning of the words; (2) effect must be given to all the language of the instrument and no part shall be rejected if it can be given a meaning; (3) the language of the deed shall be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed."

The appellants ask us to find that the reservation was intended to insure only that the County would receive any condemnation damages outstanding at the time of the conveyance and then due to the County. To adopt such an interpretation, however, would necessitate our ignoring the clear wording of the reservation and would in fact make it meaningless. As the court below found, no damages could have been outstanding in 1959, because no action had yet been taken by the Commonwealth to expand Route 49015. It is true that the road was in poor condition and obviously in need of improvement, and that, as far back as 1947, the County Engineer had been advised by the State Highways Department that it intended to develop plans for an improvement of the highway. In 1951 the Department made a preliminary survey, which consisted of locating topographical features, and various other preliminary studies were begun as early as 1952, which continued along very slowly. By 1959, however, the date of the conveyance to the appellants, no plans had been formulated for the specific relocation or widening of the highway, even though the County clearly was on notice that such plans would be forthcoming. The purpose for

including the reservation in the deeds, therefore, becomes quite clear. It was to reserve damages for the expansion of Route 49015 which clearly was to come at some time in the future, and the plain language of the reservation, indicating a prospective effect, cannot be questioned.

The appellants claim further, however, that a construction of the reservation which recognizes that it applies to a condemnation occurring after 1959 would mean that it was intended to apply to *all* future condemnations, and that they would thus be deprived of all rights in any such future condemnation. Such a conclusion does not necessarily follow from our construction of the reservation, which refers only to the current condemnation, and in any case, it is not necessary to decide that issue now. It might be worthwhile to point out, however, that the case cited by both parties on this issue, *Krill v. Petitto, supra,* is not necessarily applicable. In that case, a clause in a deed reserving condemnation damages to the grantor was held to be applicable only to the initial condemnation after the transfer. But that reservation specifically referred to a "proposed relocation", while the reservation in this case is not so specific.

In a case such as this, where we are compelled to ascertain the intention of the parties by reference to the terms of their agreement, we must assume that all parties bargained in good faith and were prepared to accept all the terms of their bargain. In 1959, for the apparently reasonable sum of $1,575.00, the appellants obtained over 30 acres of land. They also then accepted a deed which reserved to the County the rights to "any" condemnation damages, and 6½ acres of the land in question has now been condemned. It is axiomatic that, when two parties bargain in good faith and come to an agreement acceptable at the time, one party

cannot later come to this Court or any other and ask for a change in the terms of the agreement because it has not worked to his advantage.

The opinion and order of the lower court are affirmed.