**Judson S. WAGNER and Ruth M. Wagner, Appellants**

v.

**LANDISVILLE CAMP MEETING ASSOCIATION, Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 7, 2010.

Filed June 1, 2011.

---

Kathleen A. Connors, Lancaster, for appellants.

Rory O. Connaughton, Lancaster, for appellee.

BEFORE: STEVENS, SHOGAN, and MUNDY, JJ.

OPINION BY STEVENS, J.:

This is an appeal from the declaratory judgment entered in the Court of Common Pleas of Lancaster County on the parties' cross-motions for summary judgment seeking determination as to their respective interests in real property. Specifically, the court determined that Appellants/Plaintiffs Judson and Ruth Wagner ("the Wagners") did not, as they contended, have a fee simple absolute ownership interest in their properties situated in the Landisville Camp Meeting, a spiritual community run by Appellee/Defendant Association of the same name. ("LCMA"). We affirm.

The trial court's Pa.R.A.P. 1925(a) Opinion has provided an apt factual and procedural history of the case as follows:

This instant matter stems from an Action for Declaratory Judgment filed on July 30, 2009 by Plaintiffs, [the Wagners], seeking a legal determination as to their ownership status in their Landisville Camp Meeting property. Defendant [LCMA] filed an Answer and New Matter and a Notice to Plead on October 2, 2009. [The Wagners] then filed a Motion for Summary Judgment on October 21, 2009. On December 7, 2009, [LCMA] filed a Cross Motion for Summary Judgment.

[The Wagners] purchased land on [LCMA's] campus in Landisville, PA on August 2[3], 200[4] and August 10, 2006. On August 2[3], 2004, they purchased Lots 4, 5, and 6 in Section E and subsequently built a cottage and garage on the land. On August 10, 2006, the Wagner's purchased the eastern portion of Lot 3, in Section E. Both of these deeds were properly recorded in the Lancaster County Recorder of Deeds office. The granting clause on the deeds does not specifically indicate if the Wagners have a fee simple absolute in their property or if they are subject to a condition subsequent, just that they hold title in the land as tenants by the entirety.

[The Wagners] argue that they believed upon their purchase of the land, they became owners of the land and any structures within, in fee simple absolute, meaning there were no limitations on

their fee due to the fact that no restrictions or special conditions were specified in the granting clauses of their deeds. They furthermore state that the clause contained in their deeds which requires them to adhere to the rules of the [LCMA] is a restrictive covenant in accordance with the use of the property and not relating to the kind of ownership, thus the legal remedies are limited to action by another Deed Holder or the LCMA in the form of suing for damages or an injunction.

[LCMA] filed an answer stating the title to the respective lots are not held in fee simple absolute but are in the fact held under and subject to a condition subsequent subject to re-entry by the LCMA and that the LCMA does retain an ownership interest in the lots and thus the LCMA's board not the Court has the right to rule over disputes involving the violation of by-laws.

Trial Court Opinion dated 3/4/10 at 1–2.

The court rejected the Wagners' argument that a debased fee could not be found in the absence of deed language explicitly limiting ownership or providing for a right of re-entry in the LCMA. Interpreting the Wagners' deeds in light of the estates conveyed earlier in the respective chains of title, the court found dispositive the fact that predecessor deeds' habendum language [1] expressly conditioned a lot holder's ownership interest on compliance with LCMA rules and by-laws. Specifically, habendum clauses provided that a grantee along with his or her heirs and assigns "shall have and hold forever" the Camp Meeting lot "upon condition" that the "lot

at all times hereafter and the owners thereof be subject to the rules, regulations, conditions, restrictions and By Laws made at this time or created hereafter by the [LCMA]." Citing *Finley v. Glenn,* 303 Pa. 131, 136, 154 A. 299, 301 (1931), which stands for the proposition that a grantee is responsible for knowing all restrictions within his or her chain of title capable of discovery upon examination of recorded deeds, the trial court determined the Wagners could not claim to have acquired an estate greater than that which predecessors in title possessed. The court therefore inferred that the parties transacted with the intent that a fee simple subject to a condition subsequent be conveyed and, accordingly, granted summary judgment in favor of LCMA

On appeal, the Wagners raise three issues for our review:

I. **WHETHER THE WAGNERS OWN THEIR PROPERTIES IN FEE SIMPLE ABSOLUTE OR THE LESSER OWNERSHIP OF FEE SIMPLE SUBJECT TO A CONDITION SUBSEQUENT FOUND BY THE LOWER COURT, GIVING THE ORIGINAL OWNER A RIGHT TO RETAKE THE LAND.**

II. **WHETHER THE STATED USE OF A PROPERTY [F]OR THE PURPOSE OF AN ORGANIZATION—WITHOUT MORE–CAN BE THE RATIONALE FOR DETERMINING WHETHER A DEED CAN BE INTERPRETED AS LIMITING OWNER-**

---

1. As we explained in *Herr v. Herr,* 957 A.2d 1280 (Pa.Super.2008), a habendum clause is "[t]he part of a deed that defines the extent of the interest being granted and any conditions affecting the grant." Black's Law Dictionary (7th Ed.) at 716; *see Ontelaunee* *Orchards v. Rothermel,* 139 Pa.Super. 44, 11 A.2d 543, 545 (1940) ("The purpose of the habendum clause in a deed is to determine what estate passes."). *Id.* at 1286–87. (emphasis in original).

SHIP RATHER THAN SIMPLY LIMITING USE.

III. WHETHER, TO PROTECT AN OPEN EXCHANGE OF PROPERTY RIGHTS, IT IS IMPORTANT TO REQUIRE DEEDS TO EXPRESSLY LIMIT OWNERSHIP AND ANY POSSIBILITY OF DIVESTITURE OF RIGHTS, ON THE FACE OF THE DEED ITSELF, THEREBY GIVING UNEQUIVOCAL NOTICE TO PURCHASERS THAT THESE RIGHTS COULD BE SUBJECT TO LOSS.

Brief for Appellants at 4.

When faced with a motion for summary judgment, the non-moving party must adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor. Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Ertel v. Patriot–News Co.*, 544 Pa. 93, 101–102, 674 A.2d 1038, 1042 (1996), cert. denied, 519 U.S. 1008, 117 S.Ct. 512, 136 L.Ed.2d 401 (1996). "[W]e view the record in the light most favorable to the non-moving party and resolve all doubts as to the existence of a genuine issue of material fact in its favor." *Juniata Valley Bank v. Martin Oil Co.*, 736 A.2d 650, 655 (Pa.Super.1999). Like the trial court,

we determine whether the record documents a question of material fact concerning an element of the claim or defense at issue. If no such question appears, the court must then determine whether the moving party is entitled to judgment on the basis of substantive law ... We will reverse the resulting order only where it is

established that the court committed an error of law or clearly abused its discretion.

*Souder v. Rite Aid Corp.*, 911 A.2d 506, 507 (Pa.Super.2006), *appeal denied*, 593 Pa. 757, 932 A.2d 76 (2007).

*Herr*, 957 A.2d at 1284–1285 (Pa.Super.2008).

 The Wagners' issues coalesce to charge error with the lower court's reliance on surrounding circumstances, namely, the Wagners' chain of title, to determine both the meaning of the "Under and Subject to" clause in their deeds and the effect such clause had in conveying a fee simple subject to a condition subsequent.

A fee simple subject to a condition subsequent is created where the deed provides that upon the happening of some specified event, the grantor has the right and power to terminate the estate. *Stolarick v. Stolarick*, 241 Pa.Super. at 506, 363 A.2d at 797 (1976). The interest held by the grantor in such cases has been termed a *right of re-entry. Id.* This interest has also been called a *power of termination. Restatement of Property*, § 24 (1936). The obvious difference between a fee simple determinable and a fee simple subject to a condition subsequent is that in the former the estate reverts automatically, while in the latter the reversion requires some action on the part of the grantor. *Higbee Corporation v. Kennedy, supra* [286 Pa.Super. 101, 428 A.2d 592 (1981) ]; *Stolarick v. Stolarick, supra; Restatement of Property*, §§ 44 § 45 (1936).

*Emrick v. Bethlehem Tp.*, 506 Pa. 372, 379, 485 A.2d 736, 739 (1984).

As nowhere within the four corners of their deeds is there specified either a right of re-entry in LCMA or any condition upon which such a right may be exercised, the Wagners argue, the lower court should have declared that they hold fee simple

absolute interests in their real properties. We disagree, for even if the face of each Wagner deed, viewed in isolation, leaves doubt as to the existence of a reversionary interest in the LCMA, reading such language in light of subject matter and other circumstances surrounding the conveyances removes any and all doubt in favor of LCMA.[2]

■ "Where a deed or agreement or reservation therein is obscure or ambiguous, the intention of the parties is to be ascertained in each instance not only from the language of the entire written instrument in question, but also from a consideration of the subject matter and of the surrounding circumstances." *Amerikohl Mining Co., Inc. v. Peoples Natural Gas Co.* 860 A.2d 547, 550 (Pa.Super.2004) (citation omitted). "Thus, in construing [a] deed, it is the intention of the parties at the time of the transaction that governs." *Id.* (citing *Stewart v. Chernicky,* 439 Pa. 43, 49, 266 A.2d 259, 263 (1970)). Where an ambiguity arises, "we favor the construction of the agreement which makes it fair and rational, not the construction which makes it unusual or inequitable." *Id.* (Citing *Stewart,* at 50, 266 A.2d at 263). *See also Yuscavage v. Hamlin,* 391 Pa. 13, 137 A.2d 242 (1958) (Looking to recital portion of deed to infer intent of parties where operative part of deed is uncertain). In this vein, jurisprudence of this Commonwealth has stated:

> [a]lthough a certain degree of formality is associated with deeds of real estate, and technical expressions of established meaning are generally employed to describe the interest to be created thereby, these are not essential. They are but guideposts to assist in the search for the true intention of the parties, which

must ultimately control. Any words manifesting an intent to convey a particular estate are sufficient.

*Hess v. Jones,* 335 Pa. 569, 572, 7 A.2d 299, 300–301 (1939).

■ The lower court interpreted the Wagner deeds by reference to ownership-limiting habendum language appearing in the chain of title starting with the 1901 conveyance from the LCMA to the original grantee. The Wagners deny that this limitation in ownership interest ever reached them, however, because deeds prepared by LCMA later in the chain of title omitted classic habendum language altogether. We therefore begin by examining whether the chain of title was no longer relevant to interpreting the Wagner deeds.

A careful reading of the more recent deeds in the chain of title leading up to and including the Wagner deeds themselves indeed shows that they failed to incorporate the introductory habendum expression "to have and hold forever ... upon this condition ..." which had signaled what estate passed in the earlier conveyances. Nevertheless, they retained the ultimate condition as expressed in the earlier deeds, namely, that a grantee takes title under and subject to LCMA rules, regulations, and By-laws. It is this specific language appearing in all deeds within the chain of title, whether prefaced by technical habendum language or not, that has always manifested the limitation of a grantee's interest in the Camp Meeting lots being conveyed. As such, we reject the Wagners' attempt to sever their deeds from their respective chains of title and approve of the lower court's reference to the chains as circumstantial evidence relevant to interpreting the Wagner deeds.

**2.** Because a contextual, totality of circumstances review of the deeds' language removes any purported ambiguity therefrom,

see *infra,* we reject the Wagners' argument that the deeds must be read against the interest of LCMA as preparer of the deeds.

We turn, then, to whether the clause providing that the grantee takes under and subject to By-laws bears upon the grantee's ownership interest. While neither the Wagner deeds nor any predecessor deed in the chain of title specifies the particular conditions expressed in the By-laws, the record shows that the By-laws openly and notoriously provide that a lot holder noncompliant with certain specified LCMA rulings shall be subject to forfeiture of all property rights and the LCMA's corresponding right of reentry onto the grounds. It is apparent from the record, furthermore, that the LCMA makes a prospective purchaser's knowledge of and agreement to abide by the By-laws a prerequisite to purchasing a Camp Meeting property.

Specifically, the Wagners, as any prospective purchaser is required to do, completed a written application which included a prepared statement that the applicant agrees to abide and be guided by the By-Laws and rules of the Camp. Even if an applicant claims as the Wagners have that he was unfamiliar with the By-laws at the time he completed the written application, an open discussion of By-laws appears to be the central concern of the next step in the application process. According to the LCMA's written "Policy [on] Sale of Cottage(s)," if the applicant is viewed favorably upon review of the written application, a "Transfer Committee" conducts a personal interview "at which time By–Law requirements are discussed." Notably, the written policy describes no other part to the personal interview other than the discussion of By-laws.

Having experienced firsthand this exacting process with its emphasis on By-law acknowledgment and adherence, the Wagners must be held to have understood and accepted the "Under and Subject to" clause in their deeds as memorializing the reversionary interest held by the LCMA— pursuant to express By-law provisions on lot holder forfeiture and LCMA re-entry— on every parcel within the Camp grounds, including their own. Distinct from a restrictive covenant as to land use, therefore, this clause by its incorporation of the By-laws directly affects the extent of a lot holder's ownership interest, making his or her right to both retain and convey title conditional on LCMA approval. Thus limited in their control of their estates, the Wagners cannot persuasively maintain that the deeds as written conveyed any interest greater than fee simple subject to a condition subsequent.

Finally, we note that adopting this construction of the Wagner deeds avoids the unusual and inequitable result that would attain were we to deny a reversionary interest in the LCMA. Coming through the language found in the Wagner deeds, deeds in the respective chains of title, and other documentation in the record is the incontrovertible reality that the spiritual mission of the Camp Meeting and the LCMA's role in effectuating this mission remain just as determinative of a lot holder's stakehold now as it did over one-hundred years ago at the Camp Meeting's inception. To have found otherwise in this matter would have placed the Wagners in a different position relative to both their predecessors in interest and current fellow LCMA members and worked a fundamental change in course for the Camp Meeting without any indication that the LCMA intended such a change. Simply put, the clear message in all relevant documentation is that the LCMA retains the right to retake control of any property deemed defiantly put to a nonconforming use. From the intensive application process where one agrees to be bound by LCMA by-laws granting a right of re-entry, to the requirement that a purchaser accept all closing documentation prepared by LCMA

attorneys, to language in the deeds themselves making the lot holders' ability to sell the property conditional on LCMA approval, it is abundantly apparent that the LCMA has never relinquished all ownership interest in the Camp properties.

Accordingly, we discern no error with the lower courts' reliance on surrounding circumstances to eliminate any uncertainty over the type of estate conveyed in the Wagner deeds. As we agree that a fee simple subject to a condition subsequent was conveyed to the Wagners with a reversionary interest in the LCMA, we affirm the judgment entered below.

Judgment affirmed.